**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION**

**R.E. LOANS, LLC,
and
2718 SANTA ROSA, LLC,**
                **Plaintiffs,**

v.                                           **Case No. 3:08cv76/MCR**

**EAGLE GROUP BROKERS, LLC,
THE EAGLE GROUP REAL ESTATE
 INVESTMENTS, INC.,
EAGLE LAND GROUP, INC.,
TRIPLE EAGLE & ASSOCIATES,
 one, some or all d/b/a THE EAGLE GROUP,
RON REESER, an individual,
HAL HAYES, an individual,
BEACHWALK ASSOCIATES, LLC,
 a Georgia limited liability company,
EUBY BLACK, an individual,
and
DOES 1-50, inclusive,**
                **Defendants.**
_____/

**O R D E R**

      This action involves the failed effort to develop 2718 acres of land in Santa Rosa County, Florida, known as the Jubilee Project ("the Project"). Plaintiffs R.E. Loans, LLC, and 2718 Santa Rosa, LLC, ("R.E. Loans" and "Santa Rosa" or together "plaintiffs") allege that defendants improperly distributed certain Project development funds and seek the return of those funds.  Presently before the court are defendant Euby Black's ("Black") motion to stay this matter pending resolution of a related state court action and Santa Rosa's motion to dismiss two counterclaims of defendants Beachwalk Associates, LLC, and Triple Eagle & Associates, Inc., ("Beachwalk" and "Triple Eagle" or "counterclaimants"). For the reasons given below, the court denies the motion to stay and grants in part and denies in part the motion to dismiss.

**Motion to Stay**

R.E. Loans and Santa Rosa filed their complaint in this case on February 22, 2008 ("the R.E. Loans/Santa Rosa action").[1] Several weeks earlier, on February 4, 2008, Black filed a complaint in the Circuit Court in Santa Rosa County, Florida ("the Black action"). The allegations of both complaints involve, in some manner, the purchase of the 2718 acres of real property ("the Property") and the Jubilee Project development of the Property. The factual backdrop of the two cases is highly complex, involving numerous parties and complicated business transactions spanning several years. A detailed recitation of the facts presented in the two actions is not necessary to resolve the issues before the court raised by the motion to stay. In short, the court notes that the claims asserted by R.E. Loans and Santa Rosa arise from events associated with efforts to develop the Jubilee Project, and the claims asserted by Black stem from events pertaining to the purchase of the Property. The countercomplaint filed by Beachwalk and Triple Eagle likewise concerns events involving the Jubilee Project development.[2]

Black argues that because his action was the first to be filed and because the state court is an adequate forum for disposition of all of the issues presented by the parties, in the interest of federal-state comity and applying the *Colorado River* doctrine factors, this

---

[1] At the time this action was initiated it was assigned to Senior District Judge Roger Vinson; the action was reassigned to the undersigned on September 25, 2008, following Judge Vinson's recusal from the case. Pending at the time of reassignment were the instant motions to stay and to dismiss. In an order dated November 5, 2008, this court stayed all discovery in this action until further notice, based on approaching discovery deadlines which Judge Vinson had set in his final scheduling order. In light of its present ruling denying the motion to stay, the court will, by separate entry, issue a revised final scheduling order.

[2] The R.E. Loans/Santa Rosa action claims include breach of contract, breach of the implied covenant of good faith and fair dealing, breach of fiduciary duty, fraud, negligence, unjust enrichment, conversion, accounting, and civil conspiracy. The counterclaims filed by Beachwalk and Triple Eagle are for breach of contract, unjust enrichment, and tortious interference with contractual relations. Claims in the Black action include tortious interference with advantageous business relationship, tortious interference with a contract, breach of duty of good faith and fair dealing, constructive trust, specific performance, fraud in the inducement, unjust enrichment, and fraud.

The parties in the two actions are essentially the same, except that J.B., Inc. ("JBI"), which is affiliated with Black; Whisper Creek, LLC, and its manager/principal owner Bolley L. Johnson; Barney Ng, the manager of Santa Rosa and owner of R.E. Loans; and Arcardia Mill Investments, LLC, are parties in the state case but not this federal case. Additionally, Hal Hayes is not named in the state case but is named here.

Case No. 3:08cv76/MCR/MD

court should stay the instant case.[3]  Responding in opposition, R.E. Loans and Santa Rosa submit that the *Colorado River* factors do not favor a stay and thus the motion should be denied.

"[F]ederal courts have a strict duty to exercise the jurisdiction that is conferred upon them by Congress." *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 116 S.Ct. 1712, 135 L.Ed.2d 1 (1996).  Nevertheless,  while stressing the federal courts' "virtually unflagging obligation . . . to exercise the jurisdiction given them," the Supreme Court has also recognized that, based on considerations pertaining to wise judicial administration, a district court may defer to a parallel state proceeding if "exceptional circumstances" exist which clearly justify abstention. *Colorado River*, 424 U.S. at 813, 817-18; *see also Moorer v. Demopolis Waterworks and Sewer Bd.*, 374 F.3d 994 (11th Cir. 2004). The principles of this doctrine "rest on considerations of [w]ise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation." *Colorado River*, 424 U.S. at 817 (citation and internal quotation marks omitted).

The first step in determining whether the *Colorado River* doctrine applies is to decide whether the concurrent state and federal cases are in fact parallel cases.  Proceedings need not involve identical parties, issues and requests for relief in order to be deemed parallel. *Ambrosia Coal and Constr. Co. v. Pages Morales*, 368 F.3d 1320, 1329 (11th Cir. 2004).  Rather, the "*Colorado River* analysis is applicable as a threshold matter when federal and state proceedings involve substantially the same parties and substantially the same issues." *Id.* at 1330.  If the two cases are not parallel, the *Colorado River* doctrine does not apply.  *See AAR Int'l, Inc. v. Nimelias Enters. S.A.*, 250 F.3d 510, 518 (7th Cir. 2001).  "[A]ny doubt regarding the parallel nature of the [state court] suit should be resolved in favor of exercising jurisdiction . . . ." *Id.* at 520.  If the actions are determined to be parallel, under the second step of a *Colorado River* analysis the defendant must show that "exceptional circumstances" justify abstention. *See Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983).  The relevant *Colorado River* considerations include: (1) the order in which the courts assumed jurisdiction over

---

[3] *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 96 S. Ct. 1236, 47 L.Ed.2d 483 (1976) (authorizing federal district court to stay action when there is ongoing parallel action in state court).

Case No. 3:08cv76/MCR/MD

property; (2) the relative inconvenience of the fora; (3) the order in which jurisdiction was obtained and the relative progress of the two actions; (4) the desire to avoid piecemeal litigation; (5) whether federal law provides the rule of decision; and (6) whether the state court will adequately protect the rights of all parties. *TranSouth Fin. Corp. v. Bell*, 149 F.3d 1292, 1294-95 (11th Cir.1998) (summarizing the factors set forth in *Colorado River* and *Moses H. Cone Mem'l Hosp.*). The decision to dismiss or stay "does not rest on a mechanical checklist, but on a careful balancing of the important factors as they apply in a given case, with the balance heavily weighted in favor of the exercise of jurisdiction." *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 16.

In this case, the court first considers the threshold question of whether the state and federal cases are parallel. Of the fifteen parties identified in the state action, ten are parties in the federal action, and there is only one defendant in the state action who is not a defendant in the federal action. Thus the court is satisfied that the parties in the two actions are substantially the same. The court does not find, however, that substantially the same issues are present in the state case as are present in this federal case. Two cases from other circuits guide the court in reaching this conclusion, *Baskin v. Bath Twp. Bd. of Zoning Appeals*, 15 F.3d 569, 572 (6th Cir. 1994), and *TruServ Corp. v. Flegles, Inc.*, 419 F.3d 584, 592 (7th Cir. 2005).

In *Baskin*, the court considered whether an action filed in state court by neighbors challenging the propriety of granting a zoning variance to a nearby homeowner was parallel to a federal court action by the homeowner challenging the same variance on constitutional grounds. In the state court action, the neighbors challenged the variance as being too permissive; in the federal court action, the homeowner challenged the variance as being too restrictive. After the homeowner successfully intervened in the state action, he removed the matter to federal court. In granting the neighbors' motion to remand, the district court *sua sponte* dismissed the federal action under the *Colorado River* doctrine. On appeal the Sixth Circuit held that the state and federal actions were not parallel and thus application of the *Colorado River* abstention doctrine was improper. The court concluded that even though the two cases stemmed from the same basic facts, the challenges to the variance raised by the parties were different and they sought different kinds of relief. *Id.* at 572. Further, the court rejected the argument that the plaintiff in the

federal action could have asserted his claims in the state court suit, noting that "in deciding whether a state action is parallel for abstention purposes, the district court must compare the issues in the federal action to the issues actually raised in the state court action, not those that might have been raised." *Id.*

In *TruServ Corp.*, the Seventh Circuit formulated the "substantially similar" question as "not whether the suits are formally symmetrical, but whether there is a substantial likelihood that the [state court] litigation will dispose of all claims presented in the federal case." *TruServ Corp.*, 419 F.3d at 592. The state and federal actions filed weeks apart both involved the owners of a hardware store and their long-term wholesaler with whom they had entered into a "membership agreement" and signed personal guaranty agreements. The business relationship soured and the owners brought suit against the wholesaler in state court, following which the wholesaler sued the owners in federal court on the basis of diversity jurisdiction. The Seventh Circuit affirmed the federal district court's refusal to abstain on the basis of *Colorado River.* Nevertheless, the appellate court found that the lower court erred in holding that the state and federal cases were parallel, because there was not a substantial likelihood that the state court litigation would dispose of all the claims raised in the federal court. In so holding, the Seventh Circuit rejected the argument that the two cases were parallel merely because the plaintiffs' claim was a compulsory counterclaim in the state action and should have been resolved there. "[N]o authority . . . suggest[s] that a federal action is parallel to a state or foreign action for Colorado River abstention purposes when the claim upon which the federal action is based is pleadable as a compulsory counterclaim in the other action." *Id.* at 593 (internal citation omitted).

Relying on the reasoning of *Baskin* and *TruServ*, the court likewise concludes the two proceedings at issue in this case are not parallel. The state case is based on Black and JBI's assertion that R.E. Loans owner/Santa Rosa manager Ng and other defendants wrongly divested them of certain economic benefits, including a twenty percent ownership interest in the Jubilee Project's developed lots, in connection with the purchase of the Property. The instant federal case is based on R.E. Loans and Santa Rosa's assertion that they are entitled to the return of certain construction loan funds which they contend Beachwalk manager Ron Reeser and other defendants used improperly during the development phase of the Project. Black has not counterclaimed in this case (although

Beachwalk and Triple Eagle have), and neither Ng nor any of the other defendants in the state case have counterclaimed against Black and JBI in that action. Even though the two cases have a common history and raise some of the same types of claims, the facts on which the claims are based are not the same: the facts of the state case primarily pertain to issues surrounding the purchase of the Property and the facts of this federal case primarily pertain to issues surrounding the Jubilee Project development. The fact that R.E. Loans and Santa Rosa could assert counterclaims in the state case that mirror its claims in this matter—thus perhaps rendering the two cases more alike—does not alter the conclusion that, as currently presented, the two actions are not "substantially similar" and thus not parallel. As noted, this court should only "compare the issues in the federal action to the issues actually raised in the state court action, not those that might have been raised." *Baskin*, 15 F.3d at 572. Additionally, especially given that the focus of the facts alleged in the state case is substantially different from the focus here and, consequently, the claims asserted are different, there is no "substantial likelihood that the [state court] litigation will dispose of all claims presented in the federal case." *TruServ Corp.*, 419 F.3d at 592. *See also Moses H. Cone Mem'l Hosp.*, 460 U.S. at 28 (stating that the requested relief must be denied if, despite the similarity of the claims, there is substantial doubt that the state court proceeding "will be an adequate vehicle for the complete and prompt resolution of the issues between the parties."); *Gulfstream Aerospace Corp. v. Mayacamas Corp.*, 485 U.S. 271, 277, 108 S.Ct. 1133, 1137, 99 L.Ed.2d 296 (1988) (indicating that a district court may enter a *Colorado River* stay order only if it has "full confidence" that the parallel state proceeding will end the litigation.) Furthermore, even if this court accepts, *arguendo*, that R.E. Loans and Santa Rosa's claims could or should be pleaded as compulsory counterclaims in the state action, that would not make the state and federal cases parallel. This court is aware of no legal authority supporting the proposition that a federal and state action are parallel for purposes of *Colorado River* doctrine analysis simply because the claim upon which the federal action is based could also be pleaded as a compulsory counterclaim in the state action.[4] *TruServ Corp.*, 419 F.3d at 592.

---

[4] An Eleventh Circuit case cited by Black, *Moorer v. Demopolis Waterworks and Sewer Bd.*, 374 F.3d 994 (11th Cir. 2004), in connection with the court's ability to stay a case under *Colorado River* principles, does not alter this conclusion. In *Moorer*, the only issue before the appellate court was whether the lower court had

Case No. 3:08cv76/MCR/MD

For the foregoing reasons, the court finds that the R.E. Loans/Santa Rosa action in this forum and the Black action in state court are not parallel proceedings. Because this threshold requirement has not been satisfied, and thus the *Colorado River* doctrine does not apply, the court need proceed no further to conclude that abstention is not warranted.[5] Black's motion to stay therefore is denied.

**Motion to Dismiss**

In Count I of the countercomplaint, Beachwalk and Triple Eagle assert Santa Rosa breached the parties' development agreement, and in Count II they assert a claim for unjust

---

correctly analyzed the *Colorado River* factors correctly and, if so, whether it should have stayed rather than dismissed the case. Before finding that a stay, rather than dismissal, was "the proper procedural mechanism for a district court to employ when deferring to a parallel state-court proceeding under the *Colorado River* doctrine," the court noted that the district court had properly analyzed the *Colorado River* factors. With respect to the "danger of piecemeal litigation" factor, the Eleventh Circuit observed that the district court had correctly noted that although the plaintiff identified "subtle differences" between the federal claim and the state claim, the plaintiff had the opportunity and the right to present arguments on the matters at issue to the state court.

First, whether the two actions were parallel was not at issue in *Moorer* and not discussed or decided by the Eleventh Circuit. Additionally, here, unlike in *Moorer*, the differences in the claims presented in the R.E. Loans/Santa Rosa action and the Black action are not "subtle"; they are substantial and material.

[5] Were it necessary for the court to apply the *Colorado River* abstention factors, however, it notes its view that the second, fifth, and sixth factors (respectively, inconvenience of the federal forum; whether federal or state law applies; and the adequacy of the state forum) are neutral in this case.

As the court now perceives them, the other three factors, to varying degrees, favor a stay. The first *Colorado River* factor, the order in which the courts have assumed jurisdiction over the property, weighs slightly in favor of a stay. The third factor concerns the order in which jurisdiction was obtained by the concurrent forums and the extent of progress that has been made in the two actions. Although R.E. Loans and Santa Rosa maintain that the state case has not progressed significantly, this court may take judicial notice of the state court's docket. Fed.R.Evid. 201. The docket reflects considerable recent activity, including the court's orders granting a motion to dismiss Count III of Black's complaint without prejudice and another order denying a motion to dismiss. Additionally, the docket indicates that numerous notices/cross notices for depositions, requests/responses regarding production of evidence, and notices of service of interrogatories have been filed. On the other hand, no discovery or other significant activity has yet occurred in this case. Thus the third factor weighs moderately in favor of a stay. The fourth abstention factor to be considered is avoiding abnormally excessive or deleterious piecemeal litigation. Here, given the complex and overlapping nature of the facts in the two actions, there is a significant danger that two simultaneous tracks of discovery would be unnecessarily duplicative and thus highly wasteful. This factor therefore weighs heavily in favor of abstention.

In light of its conclusion that the actions are not parallel, whether a balancing of the factors outlined above would result in a stay of this action is a matter this court does not decide. Nevertheless, in part given the nature of a *Colorado River* analysis, "a district court usually will expect to revisit and reassess an order denying a stay in light of events occurring in the normal course of litigation." *Gulfstream Aerospace Corp.*, 485 U.S. at 278. Accordingly, if in light of developments in the state court proceeding a party has good cause to believe that the *Colorado River* doctrine is applicable during the pendency of the action here—for example, the cases can properly be described as raising claims that are substantially similar and thus the actions are parallel in nature—a stay can again be sought. The court at that time would consider anew abstention under *Colorado River,* reweighing the above factors as may be appropriate under the circumstances then present.

Case No. 3:08cv76/MCR/MD

enrichment against Santa Rosa.[6] Santa Rosa moves for dismissal of the claims pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim.[7] The court addresses the motion, after first reciting the standard of review for motions brought pursuant to Rule 12(b)(6).[8]

In deciding a motion to dismiss for failure to state a claim under Fed.R.Civ.P. 12(b)(6), the court should construe the pleadings broadly, accept the material allegations of the complaint as true, and draw all reasonable inferences in the plaintiff's favor. *See Sheuer v. Rhodes*, 416 U.S. 232, 236 (1974), *abrogated on other grounds, Harlow v. Fitzgerald*, 457 U.S. 800, 815 (1982); *Watts v. Florida Intern. University*, 495 F.3d 1289, 1295 (11th Cir. 2007). Federal Rule of Civil Procedure 8(a)(2) requires a pleading to contain a "short and plain statement of the claim" that shows the pleader is entitled to relief. Fed.R.Civ.P. 8(a)(2). To satisfy the pleading requirements of Rule 8, a complaint must simply give the defendant fair notice of what the plaintiff's claims are and the grounds upon which they rest. *Swierkiewicz v. Sorema, N.A.*, 534 U.S. 506, 512, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002); *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Erickson v. Pardus*, ___ U.S. ____, 127 S.Ct. 2197, 2200, 167 L.Ed.2d 1081 (2007) (*per curiam*). The court must determine only whether "the claimant is entitled to offer evidence to support the claims," not whether the plaintiff can ultimately prove the facts alleged. *Swierkiewicz*, 534 U.S. at 511 (quoting *Scheuer*, 416 U.S. at 236); *United States v. Baxter Int'l, Inc.*, 345 F.3d 866, 881 (11th Cir. 2003). "[A] formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, ___ U.S. ____, 127 S.Ct.

---

[6] R.E. Loans previously moved to dismiss Count III, the counterclaim for tortious interference with contractual relations against R.E. Loans, but withdrew its motion upon filing an answer, or reply, to the counterclaims.

[7] Attached as exhibits to Santa Rosa's complaint are the February 2006 development agreement between Santa Rosa and Beachwalk (Exh. A); the February 2006 construction loan agreement between Santa Rosa and R.E. Loans (Exh. B); and a memo from Reeser to Ng dated October 2007 (Exh. C). No exhibits are attached to the countercomplaint.
In addressing the motion to dismiss Counts I and II of the countercomplaint, the court may—and does here to the extent it finds necessary—consider the exhibits attached to the complaint. *See* Fed.R.Civ.P. 10(c) (stating that "[a] copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes.").

[8] A federal court sitting in diversity generally follows federal procedural law and the substantive law of the state in which it sits. *Esfeld v. Costa Crociere, S.P.A.*, 289 F.3d 1300, 1306 (11th Cir. 2002) (applying *Erie R.R. v. Tompkins*, 304 U.S. 64, 78, 58 S.Ct. 817, 82 L.Ed. 1188 (1938)). Accordingly, in its review of the countercomplaint the court applies federal procedural law and Florida substantive law.

1955, 1965, 167 L.Ed.2d 929 (2007). The allegations are sufficient, however, if they "raise a right to relief above the speculative level." *Id.* In other words, the complaint must include "enough facts to state a claim to relief that is plausible on its face." *Id.* at 1964-65. Thus, under the Supreme Court's "most recent formulation of the pleading specificity standard," *Watts*, 495 F.3d at 1295, a complaint must present "'enough factual matter (taken as true) to suggest' the required element." *Id.* (quoting *Twombly*, 127 S.Ct. at 1965)). Once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Twombly*, 127 S.Ct. at 1969. There is no "probability requirement at the pleading stage"; rather, the standard "simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of" the necessary element. *Id.* at 1965. It is sufficient if the complaint succeeds in "identifying facts that are suggestive enough to render [the element] plausible." *Id.*

Beachwalk and Triple Eagle allege the following facts in their countercomplaint. In February 2006 Santa Rosa entered into a development agreement with Beachwalk which provided that Beachwalk would develop the Property; the agreement further identified Triple Eagle as an affiliate of Beachwalk.[9] The performance contemplated under the agreement included improving and selling residential lots in the Jubilee Project. Pursuant to the terms of the development agreement, Santa Rosa agreed to obtain funds for the Jubilee Project from a lender and to reimburse Beachwalk from those funds for development costs up to $20,000,000. Consistent with its obligations under the development agreement, Santa Rosa entered into a construction loan agreement with R.E. Loans to provide funds for the Jubilee Project.

Under the development agreement R.E. Loans was required, upon submission of draw requests, to advance loan proceeds monthly to Santa Rosa for the development of the Jubilee Project. By course of dealing, Triple Eagle performed the duties of the developer under the development agreement. Santa Rosa accepted Triple Eagle's performance and issued reimbursement payments to Triple Eagle for such performance.

---

[9] The countercomplaint does not identify the significance of Triple Eagle's status as an "affiliate" of Beachwalk and the parties have also failed to address the matter in their papers or to direct the court to any portion of the lengthy, complex development agreement that might deal with this question. The court reads the countercomplaint as alleging Triple Eagle's reliance on the development agreement to assert its claims and thus proceeds with its analysis of the issues before it with this understanding.

Triple Eagle began performing Beachwalk's duties under the development agreement in February 2006. Triple Eagle submitted monthly funding requests to Santa Rosa, which Santa Rosa paid, for the period from February 2006 until approximately April 2007. Santa Rosa failed to pay Triple Eagle for funding requests made for the months of May 2007 and June 2007, when Triple Eagle submitted its last request. Triple Eagle also continued to pay costs for the Jubilee Project after June 2007 that were not reimbursed by Santa Rosa. During this time R.E. Loans stopped making monthly advances of loan proceeds to Santa Rosa.

Triple Eagle expended $14,826,449.27 attributable to the Jubilee Project but Santa Rosa reimbursed Triple Eagle only in the amount of $13,594,201.59, resulting in an out of pocket loss to Triple Eagle of $1,232,247.68. In addition, Triple Eagle incurred obligations totaling $7,740,845.84 to suppliers and contractors for the Jubilee Project which remain unpaid by Triple Eagle and unreimbursed by Santa Rosa.

The elements of an action for breach of contract under Florida law are: (1) the existence of a contract; (2) a breach of the contract; and (3) damages resulting from the breach. *See Beck v. Lazard Freres & Co., LLC*, 175 F.3d 913 (11th 1999) (citation omitted); *Rollins, Inc. v. Butland*, 951 So.2d 860, 876 (Fla. 2d DCA 2006) (citation omitted). Santa Rosa apparently does not dispute that counterclaimants have adequately stated the first and third elements of a breach of contract claim. In any event, the court readily concludes that, based on the allegations as set forth above, the Beachwalk and Triple Eagle have adequately alleged the existence of a contract and damages resulting from a breach. Thus the pleading requirements for the first and third elements of a claim for breach of contract are satisfied.

In its motion Santa Rosa focuses on the second element of a breach of contract claim, arguing that Beachwalk and Triple Eagle have failed to identify how it breached the development agreement. Citing portions of Section 5.1 of the agreement, Santa Rosa contends it retained the discretion not to pay a funding request and thus it cannot be held in breach of the agreement for simply exercising its contractual right. Counterclaimants respond that Santa Rosa's position is contrary to the terms of the development agreement.

Section V of the development agreement is entitled "Funding by Owner." In its entirety, Section 5.1, provides:

Page 11 of  14

> 5.1 CONSTRUCTION FUNDS. Subject to the Project Budget and [Santa Rosa's] approval, [Santa Rosa] shall provide funds for the Phase I Completion through a Project Financing, which shall include up to an aggregate total of $20,000,000 in available funds ("Phase I Construction Funds"), with $18,000,000 allocated to development costs and $2,000,000 interest reserve. [Santa Rosa] will have the right to determine the nature, amount and source of financing or other source of funding for the Project. Any additional funds required for Phase I Completion shall be provided by [Beachwalk]. To the extent that any portion of the Phase I Construction Funds remains unexpended following Phase I Final Completion (after payment of all Phase I development costs and interest expenses relating to Phase I, [Beachwalk] shall be entitled to receive the balance of such unexpended funds at the time of closing on the sale of the last of the Phase I lots.

Doc. 1, Exh. A at 12.

The development agreement defines the "Project Budget" as the budget for the Jubilee Project attached to the "Business Plan, included as part of the Business Plan, as the same may be established and amended from time to time upon the direction and approval of [Santa Rosa], which approval shall not be unreasonably withheld."[10] *Id.* at 6. "Phase I Completion" is described as the final completion of the development work on Phase I, which is identified as a certain 332 acres of the Property.  *Id.* at 5.  The development agreement defines "Project Financing" as "any financing to be obtained by [Santa Rosa] in connection with the acquisition, development or operation of the Property . . . ." *Id.* at 6.

As the court reads Section 5.1, in conjunction with the definitions of the terms used in Section 5.1, Santa Rosa was required to provide funds for the completion of Phase I, subject to Santa Rosa's approval and subject to the budget for the Project as it might be amended upon Santa Rosa's direction and approval, which approval Santa Rosa could not unreasonably withhold. The counterclaimants' allegation that Santa Rosa reimbursed Triple Eagle for certain duties it performed as developer "by course of dealing" under the development agreement but then failed to pay Triple Eagle's later funding requests is

---

[10] The development agreement defines the "Business Plan" as the business plan attached to it as an exhibit.  *Id.* at 3. While the development agreement is attached to plaintiffs' complaint as an exhibit, the business plan was not provided.

sufficient, under notice pleading, to identify facts which suggest the element of breach. *Twombly*, 127 S.Ct. at 1969. Furthermore, the court does not read the term of the development agreement that allows Santa Rosa to determine the nature, amount, and source of the financing or other source of funding for the Project as giving it the unilateral and unrestricted right to refuse to reimburse a funding request, as Santa Rosa apparently does. Rather, the language appears to reference *sources of financing* for the Project, which as the term "Project Financing" is defined, means funds obtained by Santa Rosa for the development, not those which it disbursed.

In short, the court concludes that the counterclaimants' breach of contract claim is sufficiently pleaded because it puts the plaintiffs on fair notice of the claim by identifying an agreement between the parties, the facts involved in the alleged breach of that agreement, and the damages allegedly sustained. Accordingly, the court concludes that as drafted the allegations of breach of the development agreement contain "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 127 S.Ct. at 1964-65. Santa Rosa's motion to dismiss Count I is therefore denied.

Santa Rosa next contends that Count II, the counterclaim for unjust enrichment, fails because an express contract exists in this case, thereby precluding as a matter of law the equitable remedy of unjust enrichment. Counterclaimants apparently argue in response that the claim for unjust enrichment is presented in the alternative to their breach of contract claim. Regardless, counterclaimants contend, even if the claim is improper they should be permitted to amend to assert a claim of *quantum meruit* so that they may seek to recover the value of certain goods and services they provided to Santa Rosa for which they were not compensated.

Santa Rosa's argument on the unjust enrichment counterclaim is well-taken. A plaintiff cannot establish a contract claim for unjust enrichment if an express contract exists between the parties concerning the same subject matter. *See Diamond "S" Dev. Corp. v. Mercantile Bank*, 989 So.2d 696, 697 (Fla. 1st DCA 2008) (where there is an express contract between the parties, claims arising out of that contractual relationship will not support a claim for unjust enrichment); *Ocean Communications, Inc. v. Bubeck*, 956 So.2d 1222, 1225 (Fla. 4th DCA 2007); *Harding Realty, Inc. v. Turnberry Towers Corp.*, 436 So.2d 983 (Fla. 3d DCA 1983). Where an agreement is arrived at by words, oral or written,

the contract is said to be "express." 17 Am.Jur.2d Contracts § 3 (1964).  Notwithstanding the poorly developed allegation that its performance was "by course of dealing," in asserting that "Triple Eagle performed the duties of the developer under the [d]evelopment [a]greement," doc. 1 at 3, Triple Eagle appears to rely on an express contract.  Accordingly, under Florida law, dismissal of the counterclaim for unjust enrichment, as pleaded, is appropriate due to the existence of an express contract. *See Diamond "S" Dev. Corp.*, 989 So.2d at 697.  Moreover, because counterclaimants do not adequately allege that any other agreement existed—such a contract implied in law, *see Tooltrend, Inc. v. CMT Utensili, SRL*, 198 F.3d 802, 805 (11th Cir. 1999) (discussing nature and elements of an unjust enrichment claim under Florida law)—but rather seem to rely solely on the existence of the express contract, counterclaimants have no basis for pleading a claim of unjust enrichment in the alternative to their breach of contract claim.

For the foregoing reasons, the court concludes that, as their claim is presented in the countercomplaint, Beachwalk and Triple Eagle are unable to state a claim for unjust enrichment, even in the alternative.  Santa Rosa's motion to dismiss Count II of the countercomplaint is therefore granted.[11]

Counterclaimants assert they should be permitted to amend their complaint to include a claim for *quantum meruit*.  Under Federal Rule of Civil Procedure 15(a), a party may amend its pleadings "once as a matter of course at any time before a responsive pleading is served. . . ." Fed.R.Civ.P. 15(a).  Rule 7 provides that only certain filings may be considered responsive pleadings, including a complaint, an answer, a reply to a counterclaim, an answer to a cross-claim, a third-party complaint, and a third-party answer.  Fed.R.Civ.P. 7.  R.E. Loans has replied to the countercomplaint but Santa Rosa has not; Santa Rosa has only filed a motion to dismiss.  A motion to dismiss is not, for purposes of

---

[11] Santa Rosa additionally argues that, to the extent the unjust enrichment counterclaim involves the same damages asserted under the breach of contract counterclaim, the economic loss rule does not permit recovery.  Generally stated, the economic loss rule bars causes of action in tort for purely economic losses between parties to a contract, where the defendant "has not committed a breach of duty apart from a breach of contract." *Indem. Ins. Co. of N. Am. v. Am. Aviation, Inc.*, 891 So.2d 532, 537 (Fla. 2004); *see also AFM Corp. v. S. Bell. Tel. & Tel. Co.*, 515 So.2d 180, 181 (Fla.1987) (tort must be "distinguishable or independent of [the] breach of contract") (quotation omitted).  In light of its conclusion that the motion to dismiss counterclaimants' unjust enrichment claim should be granted, the court does not reach the possible application of the economic loss rule to this claim.

Case No. 3:08cv76/MCR/MD

Rule 15(a), a responsive pleading. *Williams v. Board of Regents of the Univ. Sys. of Georgia*, 477 F.3d 1282, 1291 (11th Cir. 2007). When, as here, an action has more than one defendant, "the plaintiff may amend the complaint as a matter of course with regard to those defendants that have yet to answer." *Id.* (citing *Brewer-Giorgio v. Producers Video, Inc.*, 216 F.3d 1281, 1284 (11th Cir. 2000)). Accordingly, Beachwalk and Triple Eagle are entitled as a matter of right to amend their countercomplaint, to the extent the claims amended name Santa Rosa as the defendant.

Accordingly, it is ORDERED:

1. Black's motion to stay (doc. 58) is DENIED.

2. Santa Rosa's motion to dismiss Counts I and II of Beachwalk and Triple Eagle's countercomplaint (doc. 39) is DENIED as to Count I and GRANTED as to Count II.

3. Beachwalk and Triple Eagle should file their amended countercomplaint within ten (10) days of the date of this order, following which Santa Rosa will have ten (10) days in which to file a response.

4. The clerk shall refer this case to chambers for issuance of a revised final scheduling order.

**DONE and ORDERED** this 30th day of March, 2009.

        s/ *M. Casey Rodgers*
    **M. CASEY RODGERS**
    **UNITED STATES DISTRICT JUDGE**